## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

In re                            ) Case No. _____

                                    )

                                    ) NOTICE OF ***PRELIMINARY***

                                    ) HEARING ON MOTION

                                    )    FOR USE OF CASH COLLATERAL

                                    )    TO OBTAIN CREDIT

Debtor(s)                      ) *(Check One)*

YOU ARE NOTIFIED THAT:

1.    The undersigned moving party, _____, filed a Motion    For Use of Cash Collateral    To Obtain Credit *(check one)*. A copy of the motion is attached; and it includes (i) the statement required by Local Form #541.5, and (ii) the following allegations:

        a.  The immediate and irreparable harm that will come to the estate pending a final hearing is _____ _____.

        b.  The amount of    cash collateral    credit *(check one)* necessary to avoid the harm detailed above prior to the final hearing is _____.

2.    The name and service address of the moving party's attorney (or moving party, if no attorney) are: _____.

3.    A ***PRELIMINARY*** HEARING on the motion WILL BE HELD ON _____ AT _____ IN _____. Testimony will be received if offered and admissible.

4.    If you wish to object to the motion, you must do one or both of the following: (1) attend the preliminary hearing; and/or (2) file with the Clerk of Court (i.e., if the 5-digit portion of the Case No. begins with "3" or "4", mail to 1001 SW 5th Ave #700, Portland OR 97204; OR if it begins with "6" or "7", mail to 405 E 8th Ave #2600, Eugene OR 97401), a written response, which states the facts upon which you will rely and, if the response is filed within three business days before the hearing, notify the judge's chambers immediately after filing the document, as required by LBR 9004-1(b).

5.    On _____ copies of  this notice  and the motion were served pursuant to FRBP 7004 on the debtor(s); any debtor's attorney; any trustee; any trustee's attorney; members of any committee elected pursuant to 11 U.S.C. §705; any creditors' committee chairperson [or, if none serving, on all creditors listed on the list filed pursuant to FRBP 1007(d)]; any creditors' committee attorney; the U.S. Trustee; and all affected lien holders whose names and addresses used for service are as follows:

_____

Signature of Moving Party or Attorney                            OSB #

_____

(If debtor is movant) Debtor's Address & Taxpayer ID#(s) (last 4 digits)

541.1 (6/1/15)

Keith Y. Boyd, OSB #760701
keith@boydlegal.net
The Law Offices of Keith Y. Boyd
724 S. Central Ave., Suite 106
Medford, OR 97501
Telephone: (541) 973-2422
Facsimile: (541) 973-2426
        Of Attorneys for Debtor in Possession

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>Sawyer Wood Products, Inc.,<br><br>        Debtor. | Case No. 16-60250-fra11<br><br>MOTION FOR AUTHORITY TO USE CASH COLLATERAL<br>(Columbia State Bank and Bruce and Mary Bergstrom)<br><br>**EXPEDITED CONSIDERATION REQUESTED** |

      Sawyer Wood Products, Inc., the debtor in possession ("DIP"), hereby moves the Court

for a interim order authorizing the use of cash collateral pursuant to 11 U.S.C. §363(c), FRBP

4001(b), and LBR 4001-2.

CONCISE STATEMENT PURSUANT TO FRBP 4001(b)(1)(B)

      1.      On February 3, 2016, this case was commenced by the filing of a voluntary

petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor manufactures oars and

paddles and related products for wholesale and retail sale.

      2.      On or about December 17, 2012, prior to the filing of the Debtor's Petition,

Columbia State Bank ("CSB") made two loans to the Debtor, and was granted a security interest

MOTION FOR AUTHORITY TO USE CASH COLLATERAL - **Page 1 of 7**

in the following personal property ("CSB Collateral"); and on or about June 2, 2014 CSB made

another loan to Debtor and was granted another security interest in the following personal

property: "**all inventory, equipment, chattel paper, accounts and general intangibles**;

whether any of the foregoing is owned now or acquired later; all accessions, additions,

replacements, and substitutions relating to any of the foregoing; all records of any kind relating

to the foregoing; all proceeds relating to the any of the foregoing (including insurance, general

intangibles, and other accounts proceeds)." On or about January 7, 2013, CSB filed its UCC-1

Financing Statement which described the CSB Collateral.

     3.     On or about September 4, 2011, also prior to the filing of Debtor's Petition, Bruce

and Mary Bergstrom ("Bergstroms") entered into that certain Stock Purchase Agreement with

Peter W. Newport, and were granted a security interest in the following personal property of the

Debtor ("Bergstrom Collateral"): "**Equipment, Accounts, General Intangibles, Common**

**Capital voting stock in Sawyer Wood Products, Inc.**, now or hereafter owned, proceeds,

products, accessions, and replacements, and all books and records related to collateral (sic)". On

or about February 1, 2013, Bergstroms filed their UCC-1 Financing Statement which described

the Bergstrom Collateral.

     4.     The DIP has negotiated loans to the DIP on terms set forth in the Motion for

Entry of Final Order Authorizing Debtor in Possession to Obtain Credit. To support its current

operations, the DIP will also need to use the cash collateral of CSB and Bergstroms ("Secured

Lenders") to pay current operating expenses.

     5.     If the DIP is not permitted to use cash collateral of Secured Lenders, it will not be

able to continue to operate its manufacturing business. Exhibit 1 contains the proposed cash

collateral budget through March 5, 2016. The weekly breakdown of expenses are as follows:

MOTION FOR AUTHORITY TO USE CASH COLLATERAL - **Page 2 of 7**

| Week 1: | $39,200 |
| Week 2: | $40,635 |
| Week 3: | $59,100 |
| Week 4: | $45,200 |
| Total: | $184,135 |

The DIP seeks to use all the proceeds from the accounts receivable, approximately $145,000. Amounts needed above the amount available will be loaned by Investors & Employees of the Debtor as outlined in Exhibit 1.

6.      Exhibit 2 contains the proposed cash collateral budget from March 6, 2016 through August 31, 2016. The DIP seeks approval to use cash collateral for operations in accordance with Exhibits 1 and 2.

7.      The DIP proposes to use cash collateral in which the Secured Lenders may hold a security interest, on the following terms:

a.      To use the cash from the proceeds of accounts receivable in the operation of the business and in conformance with the budgets attached hereto as Exhibits 1 and 2. In any month, the DIP may expend for any line item one hundred-twenty percent (120%) of the budgeted expenditures for that line item for that month. The DIP may also expend for the actual aggregate expenditures for any month one hundred-twenty percent (120%) of the budgeted aggregate expenditures for that month. Should the DIP exceed one hundred-percent (120%) in any month as previously described, Secured Lenders or any other party may file a motion with the court for an order terminating use of cash collateral or for another remedy.

b.      To provide adequate protection to the Secured Lenders during the term of this agreement:

i.      The Secured Lenders shall be granted liens on and a security interest in all post-petition personal property of the same description as and derived from the CSB

MOTION FOR AUTHORITY TO USE CASH COLLATERAL - **Page 3 of 7**

Collateral and Bergstrom Collateral, in the same manner and priority as those liens were held pre-filing, as security for any claims Secured Lenders may have arising from the diminution in the value of the interest in the pre-petition collateral resulting from the use by the DIP thereof from and after the petition date in the same position the liens currently attach to the DIP's assets.

ii. All funds received since the petition date or which will be received during the pendency of this case will be deposited in a segregated DIP bank account or accounts and all expenses of the DIP during the pendency of this case will be paid from such accounts. The DIP will not prepay expenses except in the ordinary course of business.

iii. The DIP will not use cash collateral during the pendency of this agreement for any purpose which is not authorized by the Bankruptcy Code or by an order of the court.

iv. The Secured Lenders shall have access to and the right to inspect the DIP's assets and properties during business hours.

v. The DIP will timely file with the court, and provide copies to Secured Lenders, the monthly financial statements which the DIP is obligated to file under LBR 2015.

vi. Upon reasonable notice, the DIP will permit the Secured Lenders to inspect, review, and copy any financial records of the DIP. These records will be made available at the DIP's place of business.

vii. If the DIP defaults in any of the conditions of an Order Authorizing the Use of Cash Collateral, the Secured Lenders, or either of them, may provide the DIP with written notice of such default. Such notice will also be filed with the Court and United States Trustee. If the default has not been cured within ten (10) days after notice of default is mailed, the DIP's right to use the cash collateral will terminate.

MOTION FOR AUTHORITY TO USE CASH COLLATERAL - **Page 4 of 7**

viii.  Nothing contained in a cash collateral order shall constitute:

(1) An admission by the Secured Lenders that the protection provided to it shall not at some time become inadequate to fully and properly protect its interests and at any time it may apply to the court for additional adequate protection; or

(2) An agreement to the treatment of the Secured Lenders under any plan of reorganization.

c.  The use of cash collateral order will continue until the earlier of a default and failure to cure by the DIP, confirmation of a plan of reorganization, conversion to a case under Chapter 7, or dismissal.

d.  Notwithstanding any of the provisions hereof, nothing contained in the cash collateral order shall constitute a determination as to the amount, validity, or priority of any prepetition obligation, lien, or security interest of any creditor; and all rights of the DIP and other parties in interest to argue that any prepetition lien or security interest in any property of the DIP is unperfected, unenforceable, or voidable, are preserved.

## JURISDICTION

8.  This Court has jurisdiction over this case under 28 U.S.C. §§157 and 1334. Venue of this case is properly in this District under 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. §157(b)(2)(M). The statutory predicates for the relief requested are 11 U.S.C. §§ 105(a) and 363.

## BACKGROUND

9.  The Debtor is a small business debtor as defined in 11 U.S.C. §101(51D).

10.     The Debtor began its manufacturing business in 1987.  The corporation was sold to Peter W. Newport in 2011.  Mr. Newport has brought in 3 new shareholders since that purchase.  Mr. Newport is the President and general manager of the Debtor.

11.     This is a niche business that sells its paddles, oars, and related products under several well known brand names, the most notable of which is Sawyer Paddles & Oars.  As such, this business is highly seasonal in nature, with the majority of its sales occurring in the winter months in anticipation of sales by its wholesale customers to their retail customers in the spring and summer months.  The DIP, therefore, needs to maintain its manufacturing operations as robustly as possible right now in order to take advantage of the growing orders it is receiving every day.

12.     CSB is owed approximately $720,000.  The Debtor has valued the collateral at $400,000.  Therefore, CSB is undersecured.  The Bergstroms are owed approximately $295,000 and are wholly unsecured.

13.     The DIP will require the use of the proceeds of accounts receivables to pay all expenses related to its manufacturing as set forth in Exhibit 1.  Without the use of the cash collateral, the DIP will not have the funds necessary to pay the expenses of its manufacturing operations, including payroll, utilities, maintenance, insurance, management, and taxes.

14.     Therefore, to continue its manufacturing operations, retain the current employees, and sell its products, the DIP requires the use of cash collateral through March 5, 2016 in the amounts set forth in Exhibit 1 and through August 31, 2016 in the amounts set forth in Exhibit 2.

MOTION FOR AUTHORITY TO USE CASH COLLATERAL - **Page 6 of 7**

15.     Secured Lenders will be adequately protected by the retention of the value of the equipment, replacement of accounts receivable from sales, and increase in finished goods inventory as more fully set forth in Exhibits 1 and 2.  As adequate protection for any diminution in the value of cash collateral, the Debtor proposes that the Order grant to Secured Lenders a replacement lien in all of the Debtor's assets, whether acquired prior to or after the filing date. The replacement lien does not include any of the trustee's avoidance powers under 11 U.S.C. §§ 544-550.

16.     This motion does not contain any of the generally disapproved provisions set forth in LBF 541.5, a copy of which is attached hereto as Exhibit 3.

17.     Attached hereto as Exhibit 4 is a copy of the proposed interim order approving use of cash collateral.

WHEREFORE, the DIP requests that this Court hold a preliminary hearing pursuant to 11 U.S.C. § 363(c)(3) and FRBP 4001(b) to consider authorizing the DIP, pending a final hearing, to use cash collateral as described herein, and setting a final hearing to approve the DIP's motion for authority to use cash collateral as outlined herein.

DATED this 3rd day of February, 2016.

THE LAW OFFICES OF KEITH Y. BOYD

By:     /s/ Keith Y. Boyd
        Keith Y. Boyd, OSB #760701
                Of Attorneys for Debtor in Possession

# Sawyer Wood Product, INC

**Feb 5th through March 5th, 2016**

## Cash Collateral Projections

### Cash Flow Projection

| Financial Row | Week 1 Feb 5-Feb 12 | Week 2 Feb 13-Feb 20 | Week 3 Feb 21-Feb 27 | Week 4 Feb 29-Mar 5 | 4 Week Total | Notes |
|---|---|---|---|---|---|---|
| **Beginning Cash** | | | | | **$ -** | |
| | | | | | **$ -** | |
| Cash Expected from Operations, Visa, Checks, Cash from Custo | $ 30,000 | $ 25,000 | $ 40,000 | $ 50,000 | **$ 145,000** | Cash from Operations |
| **Total Cash Expected from Loans and Operations** | **$ 30,000** | **$ 25,000** | **$ 40,000** | **$ 50,000** | **$ 145,000** | Total Cash Anticipated |
| | | | | | | |
| **Operational Expenses** | | | | | | |
| 7001 - COGS--Shop Payroll | $12,400 | | $24,000 | $0 | **$36,400** | |
| 7002 - COGS--Shop Payroll Taxes, Benefits | $0 | | $0 | $0 | **$0** | |
| 7003 - COGS--Temporary Shop Labor | $500 | | | $500 | **$1,000** | |
| 7004 - COGS--Materials for Paddles & Oars Expense | $5,000 | $15,000 | $15,000 | $10,000 | **$45,000** | COD |
| 7005 - COGS--Oar Lock Materials Expense | $3,000 | $3,000 | $3,000 | $3,000 | **$12,000** | Prepaid |
| 7007 - COGS--Accessories Expense--All | $500 | $1,500 | $500 | $1,500 | **$4,000** | COD |
| 7009 - COGS--Production Supplies-- | $1,500 | $1,500 | $2,000 | $2,000 | **$7,000** | COD |
| 7010 - COGS--Production Finish & Adhesives | $1,500 | $6,500 | $1,500 | $6,500 | **$16,000** | COD |
| 7102 - COGS--Packaging | | $1,500 | $500 | $1,500 | **$3,500** | COD |
| 7103 - COGS--Shipping Expense to Customers | $2,500 | $2,500 | $2,500 | $2,500 | **$10,000** | COD |
| 7201 - Sawyer Station Labor | $1,200 | | $2,800 | $0 | **$4,000** | |
| 7202 - Sawyer Station Taxes, Benefits, Worker's Comp | $0 | | | $0 | **$0** | |
| 7301 - Premium Gasoline for Resale | $0 | $1,000 | $0 | $1,000 | **$2,000** | COD |
| 7303 - Regular Gasoline for Resale | $4,000 | | $4,000 | | **$8,000** | COD |
| 7304 - Diesel for Resale | $0 | $1,000 | $0 | $1,000 | **$2,000** | COD |
| 7305 - Misc Food for Resale | $600 | $600 | $600 | $600 | **$2,400** | COD |
| 7306 - Misc Beverages for Resale | $500 | $500 | $500 | $500 | **$2,000** | COD |
| 7311 - Repairs & Misc Expenses | $100 | $100 | $100 | $100 | **$400** | |
| 7312 - Licenses & Dues | | | $0 | | **$0** | |
| 8001 - Sales & Customer Service Payroll Expense | $1,800 | | $3,000 | $0 | **$4,800** | Sales & Customer Service |
| 8002 - Sales & Customer Service Taxes, Benefits | $0 | | | $0 | **$0** | |
| 8004 - Sales Representative Commissions | | | | $2,000 | **$2,000** | |
| 8005 - Trade Show Expense | $0 | | | | **$0** | |
| 8006 - Advertising & Website Services | $1,000 | $1,500 | $1,000 | $1,500 | **$5,000** | Google & facebook adwords |
| 9001 - Administrative Payroll | $2,300 | | $2,300 | $0 | **$4,600** | Peter Newport |
| 9002 - Administrative Taxes & Benefit | $0 | | | $0 | **$0** | |
| 9004 - Travel Expenses | $0 | $0 | $0 | $0 | **$0** | |
| 9005 - Vehicle Expenses Gas & Van payment | $150 | $150 | $100 | $100 | **$500** | |
| 9006 - Meals | $0 | $0 | $0 | $0 | **$0** | |
| **9007 - Rent/Lease Payment on Talent Building & Land** | | | | | **$0** | |
| 9007 - Rent/Lease Payment on Talent Building & Land | $0 | | | | **$0** | Feb rent Factory |
| 9007.1 - Rent/Lease Payment on Gold Hill Building & Land | $0 | | | | **$0** | Feb rent Station/Retail |

Exhibit 1
Page 1 of 2

Case 16-60250-fra11    Doc 11    Filed 02/03/16

| Account | | | | | Total |
|---|---|---|---|---|---|
| Total - 9007 - Rent/Lease Payment on Talent Building & Land | | | | | $0 |
| 9008 - Property Taxes on Building & Land | $0 | | | | $0 |
| 9009.1 - Office Equipment Lease | $0 | | | | $0 |
| 9010 - Repairs & Maintenance--General | $200 | $200 | $200 | $200 | $800 |
| 9011 - Utilities--Electricity | | | $3,200 | | $3,200 |
| 9012 - Utilities--Gas | | | | $2,300 | $2,300 |
| 9013 - Utilities--Water, Sewer | | $350 | | | $350 |
| 9014 - Utilities--Garbage & Recycling | | $475 | | | $475 |
| 9015 - Utilities--Phone & Internet | | $600 | $350 | | $950 |
| 9016 - Depreciation Expense | $0 | | | | $0 |
| 9017 - Office Supplies | $50 | $50 | $50 | $50 | $200 |
| 9019 - Credit Card Processing Fees | | $1,500 | | | $1,500 |
| 9020 - Bank Charges | $150 | | | | $150 |
| 9021 - Interest Expense | $0 | | | | $0 |
| 9022 - Insurance Expense | | $1,110 | | | $1,110 |
| 9024 - Dues & Subscriptions | $0 | | | | $0 |
| 9025 - Professional Payroll Svc | $250 | | | $250 | $500 |
| 9026 - Software Expense--NetSuite and others | $0 | | | | $0 |
| 9030 - Bruce Bergstrom Royalty Expense | $0 | | | | $0 |
| **Total Cash Needed for Operations Feb 5th -- March 5th** | **$39,200** | **$40,635** | **$67,200** | **$37,100** | **$184,135** |
| **Ending Cash March 5th, 2016** | **$ (9,200)** | **$ (15,635)** | **$ (27,200)** | **$ 12,900** | **$ (39,135) Not Including Loans** |

| Emergency Cash to be Loaned from Investors & Employees, Convertible Debt into New Entity | | | | | | Loans |
|---|---|---|---|---|---|---|
| Cash In from Loans--Zac Kauffman $35K | | $ 6,000 | $ 19,000 | $ - | $ 25,000 | Kauffman Loan to Sawyer $3... |
| Cash In from Loans--Shyne Tourville $30K | | | $ 8,500 | $ - | $ 8,500 | Tourville Loan to Sawyer $30... |
| Cash In from Loans--Peter Newport $20K | $ 10,000 | $ 10,000 | $ - | | $ 20,000 | Newport Loan to Sawyer $20... |
| **Total Amount to Borrow from Employee/Investors** | **$ 10,000** | **$ 16,000** | **$ 27,500** | **$ -** | **$ 53,500** | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Ending Cash to Start March 2016 from Operations + Loans - Expen | $ 800 | $ 365 | $ 300 | $ 12,900 | $ 14,365 | Buffer for Unexpected CODs |

Exhibit 1
Page 2 of 2

Case 16-60250-fra11    Doc 11    Filed 02/03/16

**Sawyer Paddles & Oars**  
Revised  Jan 12th, 2016

**2016 Cash Collateral Projections - March - August**

| Month | Mar | Apr | May | Jun | Jul | Aug | Total |
|---|---|---|---|---|---|---|---|
| **Historic % Annual Sales Demand Shipped** | 9.4% | 11.0% | 11.1% | 11.6% | 10.7% | 8.9% | 62.6% |
| **Paddle & Oar Revenue** | | | | | | | |
| Oars & Oar Locks | 140,000 | 155,000 | 165,000 | 165,000 | 160,000 | 120,000 | 905,000 |
| Canoe, SUP and Kayak Paddles | 65,000 | 70,000 | 75,000 | 80,000 | 80,000 | 65,000 | 435,000 |
| Shipping Revenue | 7,500 | 11,500 | 13,000 | 12,800 | 13,000 | 9,500 | 67,300 |
| **Total Paddle & Oar Revenue** | **212,500** | **236,500** | **253,000** | **257,800** | **253,000** | **194,500** | **1,407,300** |
| *Seasonal $ Guide* | *131,583* | *154,240* | *155,929* | *162,825* | *150,300* | *125,390* | *880,266* |
| *Difference in seasonality* | *80,917* | *82,260* | *97,071* | *94,975* | *102,700* | *69,110* | |
| Fuel, Gas, Diesel, Super Sales | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 180,000 |
| Convenience, Food, Beverage Sales | 7,500 | 11,000 | 12,000 | 13,000 | 14,000 | 15,000 | 72,500 |
| | - | - | - | - | - | - | - |
| **Total Combined Revenue** | **250,000** | **277,500** | **295,000** | **300,800** | **297,000** | **239,500** | **1,659,800** |
| | | | | | | | |
| **Cost of Goods Sold** | | | | | | | |
| Paddles & Oars Costs w/shipping | 72,250 | 80,410 | 86,020 | 87,652 | 86,020 | 66,130 | 478,482 |
| Paddle & Oar Labor | 68,000 | 75,680 | 80,960 | 82,496 | 80,960 | 62,240 | 450,336 |
| Fuel Costs, Gas, Diesel, Super | 23,400 | 23,400 | 23,400 | 23,400 | 23,400 | 23,400 | 140,400 |
| Convenience, Food, Beverage Costs | 4,875 | 7,150 | 7,800 | 8,450 | 9,100 | 9,750 | 47,125 |
| Sawyer Station Labor | 6,200 | 6,200 | 6,200 | 6,200 | 6,200 | 6,200 | 37,200 |
| | - | - | - | - | - | - | - |
| **Total Cost of Goods Sold** | **174,725** | **192,840** | **204,380** | **208,198** | **205,680** | **167,720** | **1,153,543** |
| | | | | | | | |
| **Gross Profit** | **75,275** | **84,660** | **90,620** | **92,602** | **91,320** | **71,780** | **506,257** |
| **Gross Margin %** | **30.1%** | **30.5%** | **30.7%** | **30.8%** | **30.7%** | **30.0%** | **30.5%** |
| | | | | | | | |
| **Sales & Marketing** | | | | | | | |
| Sales Mgr $55K +20% Tax/Benefits | 5,750 | 5,750 | 5,750 | 6,200 | 6,200 | 6,200 | 35,850 |
| Customer Service Team, E-Commerce | 8,000 | 8,200 | 8,200 | 8,200 | 8,200 | 8,200 | 49,000 |
| Sales Rep Commissions | 5,206 | 5,794 | 6,199 | 6,316 | 6,199 | 4,765 | 34,479 |
| Trade Shows & Events | 2,500 | 1,500 | 2,000 | 1,000 | 1,500 | 13,000 | 21,500 |
| Travel & Entertainment | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 6,000 |
| Dot Com Jungle Advertising for E-Commerce | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 12,000 |

Exhibit 2  
Page 1 of 2

Case 16-60250-fra11    Doc 11    Filed 02/03/16

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Advertising Expense | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 15,000 |
| Athletes & Sponsorships | 800 | 800 | 800 | 800 | 800 | 800 | 4,800 |
| Promotional Materials | 400 | 600 | 600 | 600 | 600 | 600 | 3,400 |
| **Total Sales & Marketing** | **28,156** | **28,144** | **29,049** | **28,616** | **28,999** | **39,065** | **182,029** |
| Total Sales & Marketing % | **11.3%** | **10.1%** | **9.8%** | **9.5%** | **9.8%** | **16.3%** | **11.0%** |
| | | | | | | | |
| **General & Administrative** | | | | | | | |
| Pres/GM-$70K+20% Tax | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 42,000 |
| Newport reimb, Car, Phones, Insurance,Interest | 1,550 | 1,550 | 1,550 | 1,550 | 1,500 | 1,500 | 9,200 |
| Rent Talent $4,400, Gold Hill $1,500 | 5,900 | 5,900 | 5,900 | 5,900 | 5,900 | 5,900 | 35,400 |
| Consulting Fee--Dot Com Jungle | - | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 10,000 |
| Debt Pay Down Columbia Bank $400K | - | - | 1,500 | 1,500 | 1,500 | 1,500 | 6,000 |
| Utilities, Phone, Internet, both Facilities | 6,457 | 6,457 | 6,457 | 6,457 | 6,457 | 6,457 | 38,743 |
| Bank & Credit Card Fees | 1,600 | 1,700 | 1,800 | 2,100 | 2,050 | 2,000 | 11,250 |
| Office Supplies & Postage | 350 | 350 | 350 | 350 | 350 | 350 | 2,100 |
| Depreciation Expense | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 6,000 |
| Property Taxes | 500 | 500 | 500 | 500 | 500 | 500 | 3,000 |
| Insurance | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 7,200 |
| Royalty Payment,Bruce Bergstrom 0.25% | 625 | 694 | 738 | 752 | 743 | 599 | 4,150 |
| Investor Board Fees (TBD) | - | - | - | - | - | - | - |
| Employee Bonuses (TBD) | - | - | - | - | - | - | - |
| Chapter 11 Expenses | 10,000 | 5,000 | 5,000 | 5,000 | 5,000 | | 30,000 |
| Legal, Accounting, & System | 1,350 | 1,350 | 1,350 | 1,350 | 1,350 | 1,350 | 8,100 |
| **Total General & Administrative** | **37,532** | **34,701** | **36,345** | **36,659** | **36,550** | **31,356** | **213,143** |
| **Total G&A % of Revenues** | | | | | | | **15.1%** |
| **Total Sales, General & Administrative** | **65,688** | **62,845** | **65,393** | **65,275** | **65,548** | **70,421** | **395,171** |
| **Net Income Before Tax & Bonuses** | **9,587** | **21,815** | **25,227** | **27,327** | **25,772** | **1,359** | **111,086** |
| **Net Income % of Revenue** | | | | | | | **6.7%** |

Exhibit 2
Page 2 of 2

## PROCEDURES RE: MOTIONS FOR
## USE OF CASH COLLATERAL OR TO OBTAIN CREDIT

1. <u>Motion</u> - Each motion for court approval to use cash collateral (Bankruptcy Code §363(c)(2)) or to obtain credit (Bankruptcy Code §364(c)) must clearly either:

   a. state that it does <u>not</u> contain any of the provisions set forth in paragraph 5 below; or

   b. identify which of the provisions in paragraph 5 are contained in the motion, and the justification for the provision(s).

2. <u>Notice of Hearing on Motion</u> - The moving party is required to use the appropriate local form Notice of Hearing (i.e., COMPLETELY fill out Local Form #541.1 for a preliminary hearing and Local Form #541 for a final hearing). The moving party must obtain the hearing date, time and location from the court before service.

   **Note:** A preliminary hearing is required only when use of cash collateral or credit is sought within the time frame set forth in Fed. R. Bankr. Proc. 4001(b)(2) or (c)(2), and only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

3. <u>Service of Motion and Notice</u> - The moving party must serve the motion and notice on all parties listed in pt. 5 of the notice.

   **Note:** Service for a preliminary hearing must be made within a reasonable time prior to the hearing by giving telephonic or other actual notice of the hearing date, time and location to all parties requiring notice (including the U.S. Trustee). Service for a final hearing must be made within 2 business days after receiving the hearing date. A moving party who cannot serve the motion and notice within these time frames must notify the court and obtain a new date. Sanctions may be imposed for failure to comply.

4. <u>Filing of Motion and Notice with Clerk's Office</u> - The motion and notice must be filed with, or mailed to, the Clerk on the date of service.

5. <u>Discouraged Provisions</u>.

   a. The court will not normally approve the following types of provisions in motions either to use cash collateral or to obtain credit.

      1. Cross-collateralizing prepetition debt with postpetition assets.

      2. Findings of fact on matters extraneous to the approval process. (For example, in connection with an application to borrow on a secured basis, a finding that the debtor cannot obtain unsecured credit would be acceptable, whereas a finding that the lender acted in good faith in declaring the prepetition loan in default would not be acceptable.)

      3. Provisions or findings of fact that bind the debtor, the estate and/or all parties in interest with respect to the validity, perfection, relative priority or amount of the secured party's lien or debt. This would include, for example, an order approving a provision that the secured party's lien is a "first priority" lien on the collateral.

      4. Any language that characterizes any postpetition payments as payments of interest, fees or costs on a prepetition loan.

Exhibit 3

Case 16-60250-fra11    Doc 11    Filed 02/03/16

5. Waiver of Bankruptcy Code §506(c) right to seek to charge collateral of secured party for the trustee's expenses in preserving or disposing of assets for the benefit of the secured party.

6. Granting a security interest in bankruptcy avoiding power causes of action or avoiding power recoveries.

7. Waiver or release by debtor or the estate of any or all claims the debtor/estate may have against the lender/secured party, including waiver of avoiding power causes of action against the lender/secured party or against insiders of the lender/secured party.

8. Waiver by debtor or the estate of the right to seek to prime the secured position of the lender/secured party under Bankruptcy Code §364(d).

9. Priming any other party's lien, without that party's consent or without providing adequate protection.

10. Automatic relief from the stay of Bankruptcy Code §362(a) upon the occurrence of a default, upon conversion to Chapter 7 or upon appointment of a trustee, without further application to and order of the court.

11. Waiver, effective on default, or expiration of a prior court order, of the debtor's right to move for a court order pursuant to Bankruptcy Code §363(c)(2)(B), authorizing the use of cash collateral in the absence of the secured party's consent.

b. Each motion must state that it does not contain any of these provisions, or identify which of these provisions are contained in the motion, and the justification for the provision(s).

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re: | Case No. 16-60250-fra11 |
| Sawyer Wood Products, Inc., | INTERIM ORDER ALLOWING USE OF CASH COLLATERAL |
| Debtor. | |

THIS MATTER came before the court at a preliminary hearing held on February ___, 2016 on the debtor in possession's (DIP) motion for authority to use cash collateral (Docket No. _____).  The court having reviewed the motion of the DIP, the files and records herein, and having considered the representations of counsel, and it further appearing that,

1.     On February 3, 2016, this case was commenced by the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The President for the Debtor, Peter W. Newport ("Debtor's President") testified that the Debtor manufactures oars and paddles and related products for wholesale and retail sale.

2.     Debtor's President contends that on or about December 17, 2012, prior to the filing of the Debtor's Petition, Columbia State Bank ("CSB") made two loans to the Debtor, and was granted a security interest in the following personal property ("CSB Collateral"); and on or about June 2, 2014 CSB made another loan to Debtor and was granted another security interest in the following personal property: "all inventory, equipment, chattel paper, accounts and general intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to the foregoing; all proceeds relating to the any of the foregoing (including insurance, general intangibles, and other accounts proceeds)." On or about January 7, 2013, CSB filed its UCC-1 Financing Statement which described the CSB Collateral.

3.     Debtor's President also contends that on or about September 4, 2011, also prior to the filing of Debtor's Petition, Bruce and Mary Bergstrom ("Bergstroms") entered into that certain Stock Purchase Agreement with Peter W. Newport, and were granted a security interest in the following personal property of the Debtor ("Bergstrom Collateral"): "Equipment, Accounts, General Intangibles, Common Capital voting stock in Sawyer Wood Products, Inc., now or hereafter owned, proceeds, products, accessions, and replacements, and all books and records related to collateral (sic)". On or about February 1, 2013, Bergstroms filed their UCC-1 Financing Statement which described the Bergstrom Collateral.

4.     Debtor's President contends that the DIP has negotiated loans to the DIP on terms set forth in the Motion for Entry of Final Order Authorizing Debtor in Possession to Obtain Credit [Docket No. __]. To support its current operations, the DIP will also need to use the cash collateral of CSB and Bergstroms ("Secured Lenders") to pay current operating expenses.

INTERIM ORDER ALLOWING USE OF CASH COLLATERAL - **Page 2 of 5**

Exhibit 4
Page 2 of 5

Case 16-60250-fra11     Doc 11     Filed 02/03/16

5.     Debtor's President contends that if the DIP is not permitted to use cash collateral it will not be able to continue to operate its businesses.  Exhibit 1 contains the proposed cash collateral budget for operating expenses through _____.

NOW, THEREFORE, IT IS HEREBY ORDERED:

A.     The DIP is authorized to use $_____ of the proceeds of accounts receivables of the business in conformance with the Budget attached as Exhibit 1.

B.     To provide adequate protection to CSB and Bergstrom (Secured Lenders) during the term of this agreement:

1.     Secured Lenders shall be granted a lien on and security interest in all post-petition cash, credit card receipts, accounts receivable, and inventory as security for any claims they may have arising from the diminution in the value of their interest in their prepetition collateral resulting from the use by the DIP thereof from and after the petition date in the same position their liens currently attach to the DIP's assets.

2.     All funds received since the petition date or which will be received during the pendency of this case will be deposited in the DIP's bank account or accounts and that all expenses of the DIP during the pendency of this case will be paid from such accounts.  The DIP will not prepay expenses except in the ordinary course of business.

3.     The DIP will not use cash collateral during the pendency of the requested order for any purpose which is not authorized by the Bankruptcy Code or by an order of the court.

4.     Secured Lenders shall have access to and the right to inspect the DIP's assets and properties during business hours.

5.      The DIP will timely file with the court the monthly financial statements which the DIP is obligated to file under LBR 2015.

6.      Upon reasonable notice, the DIP will permit Secured Lenders to inspect, review and copy any financial records of the DIP.  These records will be made available at the DIP's place of business.

7.      If the DIP defaults in any of the conditions of adequate protection, Secured Lenders may provide the DIP with written notice of such default.  Such notice will also be filed with the Court and United States Trustee.  If the default has not been cured within ten (10) days after notice of default is mailed, the DIP's authorization to use the cash collateral shall terminate without further notice or hearing unless continued use is authorized by further order of the court..

C.      Nothing contained in a cash collateral order shall constitute:

1.      An admission by Secured Lenders that the protection provided to them shall not at some time become inadequate to fully and properly protect its interests and at any time it may apply to the court for additional adequate protection; or

2.      An agreement to the treatment of Secured Lenders under any plan of reorganization.

D.      This use of cash collateral will continue until _____.

E.      Notwithstanding any of the provisions hereof, nothing contained in the cash collateral order shall constitute a determination as to the amount, validity, or priority of any prepetition obligation, lien, or security interest of any creditor; and all rights of the DIP and other

INTERIM ORDER ALLOWING USE OF CASH COLLATERAL - **Page 4 of 5**

Exhibit 4
Page 4 of 5

Case 16-60250-fra11    Doc 11    Filed 02/03/16

parties in interest to argue that any prepetition lien or security interest in any property of the DIP

is unperfected, unenforceable, or voidable, are preserved.

###

Proponent has provided notice as required by LBR 9021-1 and received no objections during the applicable circulation period which has now expired.


Presented By:

By:     /s/_____
        Keith Y. Boyd, OSB#760701
        keith@boydlegal.net
        The Law Offices of Keith Y. Boyd
        724 S. Central Ave., Suite 106
        Medford, OR 97501
        Tele:  541-973-2422
        Fax:   541-973-2426
                Of Attorneys for Debtor in Possession
cc:

<u>via Manual Service:</u>

See attached mailing list for other parties to be served via Manual Service.


INTERIM ORDER ALLOWING USE OF CASH COLLATERAL - **Page 5 of 5**

Exhibit 4
Page 5 of 5

SERVICE LIST FOR NOTICE OF PRELIMINARY HEARING ON
MOTION FOR USE OF CASH COLLATERAL

via Manual Service (first class mail and as described below):

Sawyer Wood Products, Inc. (via email)
POB 389
Gold Hill, OR 97525

Largest Unsecured Creditors:

Adventure Sales, Inc. (via email)
Jim Ramsey, Owner
32718 193rd Ave SE
Kent, WA  98042-9705

Ashland General Hardware, Inc. (via email)
Phillip Emard, President
249 A St
Ashland, OR  97520-1905

American Express (via facsimile)
Accounts Receivable
PO Box 30384
Salt Lake City, UT  84130-0384

Bergstrom, Bruce & Mary (via email)
705 Roca St
Ashland, OR  97520-3315

Columbia State Bank (via email)
Stan Cruse, Credit Officer
17800 SE Mill Plain Blvd Ste 100
Vancouver, WA  98683-7586

DiRienzo, Mark (via email)
PO Box 965
Ashland, OR 97520-0033

Fiberglass Supply, Inc. (via email)
Matthew Weaver, Owner
11824 Watertank Rd
Burlington, WA  98233-3631

Fowler & McNair, LLP (via email)
Charles McNair, Partner
PO Box 1746
Medford, OR  97501-0136

Hart Montgomery Outdoor Sales (via email)
Brooks Montgomery, Owner
PO Box 234
Salmon, ID  83467-0234

Howland Distributing (via facsimile)
John Howland, Owner
PO Box 829
Coquille, OR  97423-0829

Jarrell, Scott (via email)
619 Shadow Way
Central Point, OR  97502-2526

Paddling.net, Inc. (via email)
Brian Van Drie, Owner
7500 Thornapple River Dr SE
Caledonia, MI  49316-8464

Playak (via email only)
Jeroen Haouttu, Owner
Am Wasser 69
CH-8049 Zurich
Switzerland

Profile Composits, Inc. (via email)
Geoff Wood, Owner
1945 NE Laurie Vei Loop
Poulsbo, WA  98370-8580

Ramirez, Israel (via email)
821 Niantic St # 3
Medford, OR  97501-5864

SERVICE LIST FOR NOTICE OF PRELIMINARY HEARING ON MOTION FOR USE OF
CASH COLLATERAL - **Page 1 of 2**

Source Interlink Media (via email)
Billing Department
PO Box 933852
Atlanta, GA  31193-3852

S&S Sheetmetal, Inc. (via facsimile)
Bruce Shipley, President
912 Antelope Rd
White City, OR  97503-1607

System Three Resins, Inc. (via email)
Brett Cowman, President
PO Box 399
Auburn, WA  98071-0399

WCP Solutions (via email)
Kris Isackson,, Credit Manager
3600 Avion Dr
Medford, OR  97504-4011

Wells Fargo (via email)
Pam Borja, Account Manager
3502 Excel Dr Ste 105
Medford, OR  97504-9135

Wells Fargo Bank, National Association
Corporation Service Company, Reg. Agent
1127 Broadway Street NE Ste 310
Salem OR 97301

<u>Secured Lenders:</u>

Columbia State Bank
Attn: Data Research, Inc., Reg. Agent
8130 SW Beaverton-Hillsdale Hwy
Portland OR 97225

Columbia State Bank
Attn: Melanie J. Dressell, President
1301 A St Ste 800
Tacoma WA 98402

Bergstrom, Bruce & Mary (via email)
705 Roca St
Ashland, OR  97520-3315

<u>via Electronic Service:</u>

KEITH Y BOYD     ecf@boydlegal.net, arnold@boydlegal.net
US Trustee, Eugene     USTPRegion18.EG.ECF@usdoj.gov

SERVICE LIST FOR NOTICE OF PRELIMINARY HEARING ON MOTION FOR USE OF
CASH COLLATERAL - **Page 2 of 2**